UNITED STATES of America,

v.

Alan Barton NACHAMIE,
et al., Defendants.

No. S2 98 CR. 1238 SAS.

United States District Court,
S.D. New York.

Jan. 14, 2000.

Robert R. Strang, United States Attorney's Office, Southern District of New York, New York City, for the United States of America.

Valerie Amsterdam, New York, City, for Jose Hernandez.

Gerald J. McMahon, New York City, for Alan Barton Nachamie.

Diarmuid White, New York City, for Edwin Tunick.

Jeremy F. Orden, New York City, for Lydia Martinez.

Steven N. Gordon, New York City, for Ghanshyam Kalani.

Richard A. Tanner, Dickson, Ashenfelter, Slous, Tanner & Trevenen LLP, Upper Montclair, NJ, for Donna Vining.

Robert S. Fink, Caroline Rule, Kostelanetz & Fink, LLP, New York City, for Kenneth Schrager.

Michael C. Miller, Fritz & Miller, P.C., New York City, for Alan Siegel.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Defendants Jose Hernandez, Donna Vining, Kenneth Schrager and Alan Siegel have filed a number of discovery motions related to this prosecution for Medicare fraud. All four defendants have filed motions to compel the Government: (1) to comply with its obligations under Fed. R. Cr. P. 16(a)(1); (2) to provide a bill of particulars pursuant to Fed. R. Cr. P. 7(f); and (3) to provide sufficient notice of its intention to offer at trial evidence pursuant to Fed.R.Evid. 404(b). In addition, Schrager has moved to compel the Government to: (1) meet its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v.*

*United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); (2) provide statements, made in furtherance and during the course of the alleged conspiracy, of co-conspirators that the Government does not intend to call as witnesses at trial; and (3) provide a witness list. The Government opposes each defense motion.

## I. BACKGROUND

The background of this prosecution, including a detailed summary of the Second Superseding Indictment (the "Indictment"), can be found in this Court's opinion on the Government's motion to quash a number of subpoenas served by Hernandez pursuant to Rule 17(c). *See United States v. Nachamie,* 2000 WL 12139, at *1–*4 (S.D.N.Y. January 6, 2000) (*"Nachamie I"*).

## II. MOTION TO COMPEL THE GOVERNMENT TO PROVIDE DISCOVERY PURSUANT TO RULE 16(a)(1) AND/OR TO PROVIDE A BILL OF PARTICULARS PURSUANT TO RULE 7(f)

Hernandez, Vining, Schrager and Siegel all have moved to compel the Government to comply with its obligations under Fed. R. Cr. P. 16(a)(1) and to provide a bill of particulars pursuant to Fed. R. Cr. P. 7(f). Because each defendant's motion contains a number of common elements, I will consider them together. Where applicable, I have noted the differences in the relief requested by each defendant.

### A. Government's Obligations Under Rule 16(a)(1)

Rule 16(a) governs the Government's duty to disclose evidence—Rule 16(a)(1)

defines the information subject to disclosure, and Rule 16(a)(1)(C) specifically covers documents and other tangible things. This Rule states, in pertinent part:

> Upon request of the defendant the government shall permit the defendant to inspect and copy ... documents ... which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed. R. Cr. P. 16(a)(1)(C). Defendants essentially argue that the Government has failed to comply with its obligations under Rule 16(a)(1)(C) because it has produced a huge volume of documents for inspection and copying, somewhere in the range of 200,000 pages, but has not indicated which of those documents it intends to rely on to present its case-in-chief at trial.[1]

■ Given the scope of the Government's document production, there is little doubt that it has produced documents in each of the three categories specified in Rule 16(a)(1)(C), namely documents: (1) material to the preparation of a defense; (2) intended for use at trial; and (3) obtained from the defendant. The problem, then, is not one of failure to produce but of failure to designate.[2] Defendants' complaint is that because of the enormity of the production, they cannot determine which documents are simply material to the preparation of their defense and which documents the Government intends to use at trial. In short, defendants demand that

---

1. The exact number of documents is unclear. Defense counsel, relying on the Bates count numbers, provided an estimate of over 200,000 pages. *See* Transcript of Dec. 22, 1999 Hearing ("Dec. 22 Tr.") at 43. At an earlier hearing, the Government stated that it did not know how many pages were being produced. *See* Transcript of Nov. 4, 1999 Hearing ("Nov. 4 Tr.") at 22.

2. Siegel also argues that the Government must produce not just items which will be marked at trial, but "all of those documents which will be relied upon or referred to in any way by any witness called by the Government during its case in chief." Memorandum of Law in Support of Defendant Dr. Alan Siegel's Omnibus Pretrial Motions, at 16 ("Siegel Mem."). This argument will be addressed once the issue has been fully briefed.

the Government identify which documents fall into each of the categories outlined above. The clear language of Rule 16(a)(1), however, does not require the Government to identify which documents fall in each category—it only requires the production of documents responsive to any category.

Three district courts have found that the Government has a duty to identify those documents that it intends to use in its case-in-chief at trial, but none of those decisions are supported by the language of Rule 16(a)(1) or prior case law. The earliest case, *United States v. Turkish*, 458 F.Supp. 874, 882 (S.D.N.Y.1978), simply stated that it was improper for the Government to "bury the defendant in paper" by making all documents generally available.[3] The *Turkish* court cited no authority for its conclusion that the Government had an obligation to *identify* the documents it intended to use in its case-in-chief, and it mistakenly relied on another district court case, *United States v. Countryside Farms, Inc.*, 428 F.Supp. 1150, 1154 (D.Utah 1977), which merely held that the Government had a duty to *produce* such documents. The second case, *United States v. Poindexter*, 727 F.Supp. 1470, 1484 (D.D.C.1989), referred to "fairness to the defendant [and] the protection of his rights" as a basis for its order requiring the Government to *identify* the documents it intended to use in its case-in-chief. But the *Poindexter* court, which relied only on *Turkish* and *Countryside Farms* for its holding, simply compounded the error made in *Turkish*.

In *United States v. Upton*, 856 F.Supp. 727, 746 (E.D.N.Y.1994), the best reasoned of the three decisions, the court finally identified the problem: "The essence of the dispute is not that the government has not produced the documents, but that it has not isolated the documents that are relevant and may be offered at trial which would spare the defendants the task of examining all the documents." The *Upton* court then relied on *Turkish, Poindexter*, and *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir.1987), to support its conclusion that "the government [must] provide defendants with adequate notice of the allegedly falsified documents upon which it plans to rely at trial in order to allow them to adequately prepare their defense." *Upton*, 856 F.Supp. at 746–48.[4]

*Upton* also fails to ground its conclusion in the language of Rule 16(a)(1) or binding case law. As noted above, neither *Turkish* nor *Poindexter* provide adequate support for their holdings. In *Bortnovsky*, the third case cited by the *Upton* court, the Second Circuit determined that the trial court had committed reversible error by failing to require the Government to respond to the defendants' demand for a bill of particulars. The court never referred to Rule 16(a)(1)(C), which as noted earlier governs the parties' respective discovery obligations, but relied solely on Fed. R. Cr. P. 7(f), which permits a defendant to seek a bill of particulars in order to identify with particularity the nature of the charge in order to prepare for trial, avoid surprise, and avoid double jeopardy. *Bortnovsky*, 820 F.2d at 574 (citing *Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927)). Thus, *Bortnovsky* fails to support the *Upton* court's conclusion that the Government must identify the documents it intends to offer at trial.[5]

---

3. The case cited by Hernandez' counsel as affirming this decision—623 F.2d 769 (2d Cir. 1980)—is an affirmance of a different decision from the same case. That opinion involves the issue of use immunity for defense witnesses and does not address the Rule 16 issue at all.

4. The actual order read: "[T]he government [must] identify which documents it plans to rely upon at trial, and which documents its witnesses will refer to or rely upon...." *Id.* at 754.

5. The defense cites a fourth case in support of this argument. In *United States v. Weissman*, S2 94 Cr. 760, 1996 WL 751385 at *1 (S.D.N.Y. Dec. 26, 1996), Judge Haight, in *dicta*, found that the Government had not complied with its obligations under Rule

In sum, defendants' motion under Rule 16(a)(1)(C) is denied. The Government has complied with its obligations to produce, for inspection and copying, documents which "are intended for use by the government as evidence in chief at the trial. . . ." Defendants correctly identify the difficult problem that arises when the Government amasses a large number of documents "material to the preparation of the defendant's defense," and produces those documents at the same time it produces the documents it intends to use in its case-in-chief. Because the Government must produce documents meeting any of the three categories listed in Rule 16(a)(1)(C), a defendant cannot determine which documents fall into each category. But a court has no license to rewrite the Federal Rules of Criminal Procedure. While it might be wise for the Advisory Committee on Criminal Rules to consider an amendment that would require a party to *identify* those documents it intends to use in its case-in-chief, no such requirement now exists in the plain language of the Rule. In the absence of any controlling authority interpreting the Rule as requiring this action, I cannot direct the Government, at this time, to identify the documents it intends to offer in its case-in-chief.[6]

## B. Government's Obligations Under Rule 7(f)

A bill of particulars permits a defendant "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574. The decision whether to grant a bill of particulars pursuant to Rule 7(f) rests within the sound discretion of the district court. *See United States v. Cephas*, 937 F.2d 816, 823 (2d Cir.1991). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574. In addition, "[t]he proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial. . . ." *United States v. Strawberry*, 892 F.Supp. 519, 526 (S.D.N.Y.1995) (citing *United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir.1973)).

Hernandez, Vining, Schrager and Siegel all have moved to compel the Government to provide a bill of particulars, arguing that the Indictment does not provide enough specificity and that a bill of particulars will help them sort through the large number of documents produced by the Government. The facts of *Bortnovsky*, which involved a RICO prosecution for, *inter alia*, phony insurance claims for alleged burglaries, are instructive in resolving these motions.

The indictment in *Bortnovsky* charged that the defendants submitted false claims for burglary losses, but failed to identify which of the burglaries the Government intended to prove were phony. In addition to the indictment, the Government provided the defense with 4,000 documents, which undoubtedly included materials concerning the four burglaries the Government ultimately proved were fake. Reviewing these facts, the Second Circuit

---

16(a)(1)(C) because it "produc[ed] masses of documents without designating which of them it will seek to introduce at trial." The *holding* of the case, however, was that because of this failure, the defendant's reciprocal discovery obligation pursuant to Fed. R. Cr. P. 16(b)(1)(A), including the obligation to produce documents it intended to introduce at trial, was not triggered. Moreover, in reaching this determination, Judge Haight relied solely on *Turkish, Poindexter, Upton,* and *Bortnovsky*.

6. For the reasons set forth above, defendant Edwin Tunick's request that the Government be directed to identify at this time the documents which it intends to introduce in its case-in-chief is denied. Vining's request for an exhibit list, on the other hand, will be addressed once the issue has been fully briefed.

held that, by failing to identify these burglaries prior to trial, the Government impermissibly had shifted the burden of proof to the defense, which was forced to prove to the jury that all of the remaining burglaries actually had occurred. *See Bortnovsky,* 820 F.2d at 574–75. In addition, the court specifically held that the Government's production of documents prior to trial did not provide the required adequate notice:

> The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.... In sum, we find that the district court erred by failing to grant a bill of particulars which was vital to [defendants'] understanding of the charges pending and to the preparation of a defense....

*Id.* at 575.

The teaching of *Bortnovsky* is particularly relevant here. The Government in this case has produced over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims. But it has not yet informed the defendants which of these claims were false and in what way they were false. While the Indictment specifies five ways in which claims were falsified, *see Nachamie I,* 2000 WL 12139, at *1, no claims are identified by defendant, type of falsity, claim number and date. In addition, the Indictment is less specific with respect to some defendants than with respect to others. For example, Hernandez is alleged to have attended two meetings in 1997, one in Newark, New Jersey, and one in Queens, New York, but little else is pled with respect to his role in the offense or the frauds for which he is allegedly responsible. Under the facts of *Bortnovsky,* the Government has not yet complied with its obligation to provide adequate notice to the defense.

Indeed, the Government has recognized that it must provide specifics to the defendants well in advance of trial. In its Memorandum of Law in opposition to these motions, and in a recent court appearance, the Government has committed itself to provide certain materials on certain dates:

> [T]he Government, sixty days before trial, will identify procedures that were fraudulently billed to Medicare during the course of [the] scheme. The Government also anticipates introducing summary charts, which will show, among other things, the frequency and repetitive nature of the billings to Medicare. The Government is prepared to provide such draft summary charts to the defense forty-five days before trial if a satisfactory stipulation can be reached regarding the fact that the charts are merely drafts and the defense will make no use of them at trial. Forty-five days before trial, the Government will also identify specific "charts" seized or other[s] obtained during the course of the Government's investigation about which the Government intends to offer specific testimony at trial.

Government's Memorandum of Law in Opposition to the Pretrial Motions of Defendant Jose Hernandez ("Gov't Opp.") at 9–10.

> [T]he Government would provide these summary charts 45 days before trial.... [A]fter this information is provided, the defense will know the specific beneficiaries, the specific charts, and now the specific codes within those charts that it is expected to challenge. It will have the expert reports. It will know about the sort of general nature of the repetitive billing, mill-like testing that the government will use to demonstrate the overall fraudulent nature of the scheme. And it will know specific codes that, throughout the conspiracy, were consistently billed in a fraudulent manner.

Dec. 22 Tr. at 54.

While these offers are a good start, they are not specific enough and do not go far enough to "enabl[e] defendant[s] to pre-

pare for trial, to prevent surprise, and to interpose a plea of double jeopardy. . . ." *Bortnovsky,* 820 F.2d at 574; *see also United States v. GAF Corp.,* 928 F.2d 1253, 1260 (2d Cir.1991). As noted earlier, the required notice must be provided in the Indictment or in "some acceptable alternate form." *Bortnovsky,* 820 F.2d at 574. Because the Government has declined to identify which of the documents provided to the defense pursuant to Rule 16(a)(1)(C) it intends to use in its case-in-chief at trial, it must, instead, respond to an appropriate bill of particulars. *See Bortnovsky,* 820 F.2d at 574–75 (bill of particulars can provide guidance to defense faced with "mountains of documents"); *United States v. Davidoff,* 845 F.2d 1151, 1155 (2d Cir.1988) (fact that Government produced 6,000 pages of discovery did not obviate need for bill of particulars in complex prosecution).

Hernandez has made eleven separate demands for particulars. *See* Declaration of Michael S. Sommer at pp. 4–7, annexed to Notice of Motion for a Bill of Particulars. I will address each Hernandez demand in turn, and my rulings on them apply to all defendants. Where applicable, I also will address overlapping requests by Vining and Siegel; Schrager simply adopts the requests of Hernandez, Vining and Siegel.[7]

1) "With respect to Count 1, ¶ 8, identify: (1) all of the unindicted co-conspirators who allegedly conspired with the named defendants; and (ii) the date that each conspirator joined the alleged conspiracy." This demand is granted in part and denied in part.

First, Hernandez seeks the names of known unindicted co-conspirators. The Second Circuit has affirmed both the grant and the denial of such a request. *Compare United States v. Torres,* 901 F.2d 205, 233–34 (2d Cir.1990) (affirming denial of demand for bill of particulars requiring

"identi[fication] of those other persons 'known and unknown'") *with United States v. Feola,* 651 F.Supp. 1068, 1131–34 (S.D.N.Y.1987) (granting demand for bill of particulars specifying "the names of all persons whom the Government will claim at trial were co-conspirators"), *aff'd without op.,* 875 F.2d 857 (2d Cir.1989). A review of the case law in this district reveals no clear distinction among circumstances in which courts grant a request for the names of known unindicted co-conspirators and circumstances in which they do not. *See United States v. Killeen,* No. 98 Cr. 143, 1998 WL 760237, at *5 (S.D.N.Y. Oct. 29, 1998) ("Courts in this district have taken varying views as to the appropriateness of ordering the Government to provide the names of unindicted co-conspirators."). As noted above, the decision whether to grant such a request rests within the sound discretion of the district court. *See Cephas,* 937 F.2d at 823.

■ A bill of particulars permits a defendant "to prepare for trial, to [avoid] surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky,* 820 F.2d at 574. In deciding whether a defendant's demand for the names of known unindicted co-conspirators would achieve these ends, courts should consider the following factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation. If there are a large number of co-conspirators and a long-running conspiracy, a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met. If the Government has failed to pro-

---

7. Both Vining and Siegel have made other demands that do not overlap with the demands made by Hernandez. I will address those other demands at a later date, after they have been fully briefed.

vide adequate notice of the particulars, or if the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial. On the other hand, considering the potential danger to the co-conspirators and the risk of compromising continuing investigations allows a court to balance a defendant's need for the information against legitimate law enforcement concerns.[8]

 A consideration of these factors here leads to the conclusion that the Government must provide the defendants with the names of any known unindicted co-conspirators. *First*, there are a large number of co-conspirators (eight defendants and an unknown number of unindicted co-conspirators) and the alleged conspiracy has operated for a significant period of time (more than three years). Providing the names of known unindicted co-conspirators therefore will prevent unfair surprise. *See Strawberry*, 892 F.Supp. at 527 (granting bill of particulars for "the names of all persons whom the Government will claim at trial were co-conspirators" where defendant argued in part that he was not present at most of the incriminating events); *United States v. Trie*, 21 F.Supp.2d 7, 22 (D.D.C.1998) (granting request for names of unindicted co-conspirators where: (1) there were approximately 18 co-conspirators; (2) the defendant may never have met some of them; and (3) the alleged conspiracy lasted more than three years). *Second*, as described earlier, the Government has produced a substantial number of documents—more than 200,000 pages—but has failed to give defendants adequate notice of the particular charges against them. Providing the names of known unindicted co-conspirators therefore will allow defen-

dants to prepare for trial. *Compare Strawberry*, 892 F.Supp. at 527 (granting request for names of co-conspirators as "necessary to the preparation of the defense") *with United States v. Rodriguez*, 99 Cr. 367, 1999 WL 820558, at *2 (S.D.N.Y. Oct. 13, 1999) (denying request for identity of known co-conspirators because "the indictment, particularly when coupled with the discovery already provided to the defendant, allows [him] both to prepare his defense and to avoid prejudicial surprise at trial"). *Third*, there is no legitimate concern that disclosing the names of unindicted co-conspirators will endanger those individuals or compromise the Government's investigation. *See Trie*, 21 F.Supp.2d at 22 n. 14 (ruling that government had provided no evidence that defendant would attempt to tamper with witnesses). In short, this case charges Medicare fraud—not narcotics trafficking or murder—and defendants must be provided with the names of known unindicted co-conspirators.

Earlier in these proceedings, defendant Nachamie moved to compel the production of the names and addresses of all known co-conspirators. In response to that motion, I stated: "They don't have to turn over to you names and addresses of co-conspirators." Transcript of July 28, 1999 Hearing ("July 28 Tr.") at 13. At that stage, however, this case involved four defendants and the Government had not yet produced the voluminous documents. Since that time, the Government has indicted four additional defendants, including Hernandez, and has produced over 200,000 pieces of paper, demonstrating a need for the production of the names of unindicted co-conspirators in order to prevent unfair surprise and enable defendants to prepare for trial.

---

**8.** Similar considerations have been applied in related contexts. *See Turkish*, 458 F.Supp. at 881 (in determining whether to grant defendant's request for witness list, court should balance defendant's specific showing of need against "the government's fear of danger from disclosure"); *In re United States*, 834 F.2d 283, 286 (2d Cir.1987) (refusing to allow production of statements of nontestifying co-conspirators because "a defendant who fears further disclosure by a coconspirator could take whatever unlawful steps are necessary to insure that his alter ego is silenced").

Second, Hernandez seeks the date that each conspirator joined the alleged conspiracy. Unlike the demand for the names of known unindicted co-conspirators, this demand is routinely denied. *See United States v. Matos–Peralta,* 691 F.Supp. 780, 791 (S.D.N.Y.1988) ("[S]ince the government is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined the scheme, and as the circumstantial proof on which the government usually relies to prove the existence of a scheme often does not reveal such details, the courts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate."); *see also United States v. Mittal,* No. 98 Cr. 1302, 1999 WL 461293, at *9 (S.D.N.Y. July 7, 1999) (quoting *Matos–Peralta* ). No special circumstances justify granting this demand.[9]

2) "With respect to Count 1, ¶¶ 9 and 11, identify each and every one of the 'false and misleading' claims which were allegedly submitted and/or filed as part of the conspiracy, and, for each such claim, specify: (i) who allegedly prepared each such form; (ii) who allegedly submitted each such form; (iii) when and where each such form was prepared and submitted; (iv) each item or entry on each such form which is alleged to be 'false and misleading;' (v) the manner in which such item or entry is allegedly false; (vi) the statement or amount which the Government contends would have been an accurate statement of each such item or entry; and (vii) the manner in which each such amount was calculated." This demand is granted only with regard to those claims that the Government intends to prove at trial.

Because this ruling applies to all defendants, Vining's fourth demand for a bill of particulars, which requests a subset of the documents to be provided in response to

Hernandez' second request, is denied. For the same reason, Siegel's third through seventh demands for a bill of particulars are denied. Nevertheless, in response to Hernandez' demand that it identify "the manner in which such item or entry is allegedly false," the Government should adopt Siegel's suggestion to identify in which of the five possible ways the item or entry is allegedly false. Indeed, I made a similar suggestion to the Government at a conference held on November 4, 1999:

> [Y]ou make up a chart and these are the four ways that things can be fraudulent, in way A, B, C or D. Then you slap a letter on every claim or more. . . . I am talking claim by claim. I am making it easy to do the physical typing if you will. Under A, these claims are under A, these are under B and the number of the claim can be in all four columns, if you will, but they have to know which way or more than one way the claims are allegedly fraudulent. . . . It could be A; B; A, B, C and not D; A only. I am asking you to put a letter on every claim or more than one letter. . . . You could say all claims that involve a tuberculin test, all claims that have that test were fraudulent because we know there were no tuberculin tests involved. It has to be that specific, all claims.

Nov. 4 Tr. at 26–27.

3) "With respect to Count 1, ¶ 10, identify each of the 'documents, patient files and checks' which were allegedly sent, delivered, deposited, taken or received as part of the conspiracy and, for each such document, file or check, specify: (i) who allegedly sent, delivered, deposited, took and received each such document, file and check; (ii) when and where each such document, file and check was sent[,] delivered, deposited, taken and received; (iii) each item, statement or entry on each such document, file or check which is alleged to

---

**9.** For the same reasons, Vining's first demand for a bill of particulars is granted in part and denied in part.

be false or fraudulent; and (iv) the manner in which each such document, file and check allegedly furthered the scheme alleged." This demand is granted only to the extent such documents will be offered by the Government in its case-in-chief. In addition, the Government is only required to respond to subpart (iii), but not to the other subparts.[10]

4) "With respect to Count 1, ¶ 12(d), identify each and every one of the claims that were allegedly submitted to Medicare by Mr. Hernandez as part of the conspiracy, and, for each such claim specify: (i) who allegedly prepared each such claim; (ii) when and where each such claim was prepared and submitted; (iii) each item or entry on each such claim which is alleged to be false or misleading; (iv) the manner in which such item or entry is allegedly false; (v) the statement or amount which the Government contends would have been an accurate statement of each such item or entry; and (vi) the manner in which each such amount was calculated." This demand mirrors Hernandez' second demand, except that it seeks to identify those claims submitted by Hernandez, and therefore is denied. Once the Government has identified the fraudulent claims, the defense can review the appropriate documentation to obtain the requested evidentiary detail.[11]

5) "With respect to Count 1, ¶ 12(e), identify: (i) each provider number of each doctor and professional corporation under which Mr. Hernandez allegedly billed; (ii) the date of each instance in which Mr. Hernandez allegedly moved his office; and (iii) the addresses from which and to which Mr. Hernandez allegedly moved his office in each such instance." This demand is denied because it seeks evidentiary detail not required in order to provide fair notice of the charges.

6) "With respect to Count 1, ¶ 12(f), identify each and every one of the claims which Mr. Hernandez allegedly submitted or caused to be submitted and, for each such claim, specify: (i) the time and place it was allegedly submitted; (ii) by whom and to whom it was submitted; and (iii) the manner in which Mr. Hernandez allegedly 'caused' it to be submitted." This demand is denied because it goes well beyond the identification of alleged fraudulent claims, which the Government must supply in order to provide adequate notice of the charges.

7) "With respect to Count 1, ¶ 13, identify all overt acts which the Government alleges were committed by Mr. Hernandez in furtherance of the alleged conspiracy which are not described in the indictment and, with respect to each such alleged overt act, specify: (i) the date, time and place of each such act; (ii) all persons present when each such act was committed; and (iii) the manner in which each such act allegedly furthered the alleged conspiracy." This request is denied because it requires the Government to lay out its proof three months before trial, which is not required. *See United States v. Carroll*, 510 F.2d 507, 509 (2d Cir.1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."); *United States v. Walker*, 922 F.Supp. 732, 739 (N.D.N.Y. 1996) ("[D]etailed evidence of a conspiracy is generally unavailable to defendants through a bill of particulars, and overt acts in furtherance of the conspiracy need not be disclosed."); *Feola*, 651 F.Supp. at 1132 ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the

10. Because this ruling applies to all defendants, Vining's third demand for a bill of particulars, which requests a subset of the documents to be provided in response to Hernandez' third demand, is denied.

11. For the same reasons, Vining's second and fourth demands for a bill of particulars and Siegel's third through seventh demands for a bill of particulars, each of which request a subset of the documents to be provided in response to Hernandez' second demand, are denied.

conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts.").[12]

■ 8) "With respect to Count 1, ¶¶ 13(f) and 13(g), identify: (i) each person who allegedly attended each of the alleged meetings; (ii) each statement allegedly made at each such meeting by each such person; and (iii) the manner in which each such meeting allegedly furthered the alleged conspiracy." This request is denied because it seeks impermissible evidentiary detail. *See Feola*, 651 F.Supp. at 1133 ("Nor are defendants entitled to receive, by way of a bill of particulars, all documents which would in any way tend to verify the meetings or activities described in the overt acts; the exact time and place of each overt act in the indictment; the names and addresses of persons present during the meetings; nor all meetings at which the defendant was present."); *United States v. Wilson*, 565 F.Supp. 1416, 1438 (S.D.N.Y.1983) (request for names and addresses of persons present during meetings described in overt acts held "not properly the subject of a bill of particulars").

■ 9) "With respect to Count 2, ¶ 15, identify each claim which was submitted for which the [G]overment will seek to hold Jose Hernandez criminally responsible, and for each such claim, specify: (i) who allegedly prepared each such claim; (ii) who allegedly submitted each such claim; (iii) when and where each such claim was prepared and submitted; (iv) each item or entry on each such claim which is alleged to be 'false and fraudulent;' (v) the manner in which such item or entry is allegedly false; (vi) the statement or amount which the Government contends would have been an accurate statement of each such item or entry; and (vii) the manner in which each such amount was calculated." This request is granted. The

Government is required to identify each claim for which it intends to prove that Hernandez may be held criminally responsible. *See Bortnovsky*, 820 F.2d at 575 (district court should have granted bill of particulars where defense was "left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"); *Davidoff*, 845 F.2d at 1154–55 (district court should have granted bill of particulars "identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove"). The subparts of Hernandez' demand will be addressed in the Government's response to his second demand, which contains essentially the same subparts.[13]

■ 10) "With respect to Counts One and Two, identify the role of Jose Hernandez in each of these counts." This request is denied because Hernandez' role is sufficiently described in the Indictment to provide adequate notice of the pending charges.

11) "With respect to audio and visual recordings made by the [G]overnment in connection with the investigation of this case, specify whether any of those recordings contain the voice or image of Jose Hernandez, and if any of said recordings mention Mr. Hernandez or his company Dade Medical Management." The Court granted this request in its December 22, 1999 hearing. *See* Dec. 22 Tr. at 62–64.[14]

### III. NOTIFICATION OF INTENT TO USE 404(b) EVIDENCE

Hernandez, Vining, Schrager and Siegel all have moved to compel the Government to provide sufficient notice of its intention to offer at trial evidence pursuant to Fed. R.Evid. 404(b). Rule 404(b) provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts ... may ... be

---

**12.** For the same reasons, Vining's fifth demand for a bill of particulars is denied.

**13.** For the same reasons, Vining's seventh demand for a bill of particulars is granted.

**14.** At the hearing, the Court also granted Vining's eighth demand for a bill of particulars, which sought similar materials. *See* Dec. 22 Tr. at 62–64.

admissible ... provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial." The purpose of Rule 404(b)'s notice provision is "to reduce surprise and promote early resolution" of any challenge to admissibility of the proffered evidence. *See* Fed.R.Evid. 404(b), Advisory Committee Notes, 1991 Amendment. Rule 404(b) does not define "reasonable notice" but leaves that determination to the sound discretion of the Court.

The Government offers to provide its Rule 404(b) notice two weeks before trial, but this case requires a longer than average notice period. As this Court has already written:

> This notice must occur sufficiently in advance of trial that the Defendant has time to object to the evidence and the Court has adequate time to decide such an objection. While notice is typically provided no more than two to three weeks before trial, a longer notice period is appropriate [where there is an] absence of any threat to the safety of prospective witnesses and the ... Rule 404(b) evidence [is important to] this action.

*United States v. Livoti,* 8 F.Supp.2d 246, 250 (S.D.N.Y.1998) (citation omitted). The Government has offered no good reason why it should not notify defendants well in advance of trial of its intent to offer such evidence. Accordingly, the Government must notify the defendants no later than one month prior to trial of any Rule 404(b) evidence it intends to offer.

## IV. STATEMENTS OF NON–TESTIFYING CO–CONSPIRATORS

Defendant Schrager seeks the production of statements of non-testifying co-conspirators made in the course of and in furtherance of the conspiracy. He asserts that such statements are discoverable pursuant to Fed. R. Cr. P. 16(a)(1)(A), because they are admissible as binding statements attributable to the defendant pursuant to Fed.R.Evid. 801(d)(2)(E), and therefore do not require the declarant to testify. Schrager cites a number of cases is support of this request, the most important of which are *United States v. Murgas,* 967 F.Supp. 695, 713–716 (N.D.N.Y.1997) and *United States v. Jackson,* 757 F.2d 1486, 1491 (4th Cir.1985). In essence, these courts concluded that "fairness and the interest of justice require the government to disclose the statements of alleged coconspirators ... who the government will not call as witnesses." *Murgas,* 967 F.Supp. at 713.

In *In re United States,* 834 F.2d 283 (2d Cir.1987), the Second Circuit stated:

> [W]e hold that, as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act.

*Id.* at 287. The *Murgas* Court "focus[ed] on the narrow holding" of *In re United States,* explaining that "[t]his holding makes clear that whatever statements the district court was ordering to be cross-disclosed, they were the statements of government witnesses, not nontestifying co-conspirator codefendants." *Murgas,* 967 F.Supp. at 715. Schrager similarly limits his request to "the substance of statements made by any alleged co-conspirators who will not be government witnesses." Memorandum of Law in Support of Defendant Kenneth Schrager's Discovery Motions, at 4–5 ("Schrager Mem.").

But *In re United States* dealt a broader blow to Schrager's theory. Noting that the district court did not require disclosure of statements by co-conspirators who were prospective witnesses, the Second Circuit characterized this as "a limited concession at best ... because in many cases it will be the undercover agent or informer rather than the coconspirator who is the prospective witness." 834 F.2d at 286. The *Murgas* Court explained that,

despite this statement, *In re United States* did not "prohibit the pretrial cross-disclosure of nonwitness coconspirator codefendant statements." *Murgas*, 967 F.Supp. at 715. But *Murgas* ignored the footnote that followed the above-quoted statement: "We are not concerned here with a demand for disclosure under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Accordingly, if the Government did not intend to call anyone to testify concerning coconspirators' statements, [the statements] were not discoverable at all." *In re United States*, 834 F.2d at 286 n. 2. This footnote makes clear that the statements of nontestifying co-conspirators are not discoverable absent a requirement that they be produced under the *Brady* doctrine. *See United States v. Taylor*, 707 F.Supp. 696, 701 (S.D.N.Y. 1989) (citing footnote); *United States v. Piedrahita*, No. 91 Cr. 652, 1992 WL 58857, at *5 (S.D.N.Y. Mar. 19, 1992) (citing footnote). *See also United States v. Myers*, No. 97 Cr. 140, 1997 WL 797507, at *4 (N.D.N.Y. Dec. 24, 1997) (Pooler, J.) (declining to following *Murgas* "because I believe that discovery on this basis is precluded by established Second Circuit precedent").[15]

In his reply, Schrager attempts to maneuver between the text and the footnote by arguing that he is seeking statements that the Government does intend to introduce at trial, even though it does not intend to call the co-conspirator as a witness. This argument fails to distinguish *In re United States* because, in order to introduce the statement, the Government must call someone as a witness, and *In re United States* squarely addresses that issue. *See In re United States*, 834 F.2d at 286 (discussing problems with district court's formulation because "in many cases it will be the undercover agent or informer rath-

er than the coconspirator who is the prospective witness.").

In addition, the Second Circuit rejected the underlying argument that co-conspirator statements are discoverable because they are treated as binding admissions of the defendant. The district court decision addressed in *In re United States* held that "non-witness co-conspirators' statements should be disclosed to defendants whenever the government intends to use such declarations at trial as admissions attributable to the defendants." *United States v. Gallo*, 654 F.Supp. 463, 479 (E.D.N.Y. 1987). In response, the Second Circuit stated:

> Under the district court's holding, allowing a defendant to discover the statement of a coconspirator as his own would transmogrify the coconspirator into the person of the defendant himself. What this exercise in legal legerdemain overlooks is that a defendant who fears further disclosure by a coconspirator could take whatever unlawful steps are necessary to insure that his alter ego is silenced.

834 F.2d at 286. Schrager's motion for the production of the statements of any alleged co-conspirators who will not be a government witnesses is denied.

## V. REQUEST FOR IMMEDIATE DISCLOSURE OF *BRADY* AND *GIGLIO* MATERIAL

 Schrager seeks immediate disclosure by the Government of any exculpatory or impeaching material, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Exculpatory material, if any, must be disclosed immediately. Impeachment material must be produced in a timely manner.[16] The Government is

---

**15.** Indeed, the *Murgas* Court is the only court in this Circuit to have adopted its reading of *In re United States*. *See Murgas*, 967 F.Supp. at 713–16 (Munson, J.); *United States v. LaTray*, No. 89 Cr. 110, 1989 WL 143355, at *2 (N.D.N.Y. Nov. 24, 1989) (Munson, J.).

**16.** The specifics of the production of impeachment material will be addressed at the next conference.

fully aware of its obligations under both *Brady* and *Giglio* and will undoubtedly comply with those obligations.

## VI. REQUEST FOR WITNESS LIST

■ Schrager seeks a list of witnesses that the Government intends to call at trial. A district court has discretion to compel pretrial disclosure of the identity of government witnesses, but it should grant a request only if the defendant makes "a specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." *United States v. Cannone*, 528 F.2d 296, 300–01 (2d Cir.1975). In deciding whether to require production of a witness list, courts often look to the factors set out in *United States v. Turkish*, 458 F.Supp. 874, 881 (S.D.N.Y.1978):

(1) Did the offense alleged in the indictment involve a crime of violence?

(2) Have the defendants been arrested or convicted for crimes involving violence?

(3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?

(4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?

(5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?

(6) Do the defendants have limited funds with which to investigate and prepare their defense?

■ Several of the *Turkish* factors favor compelling the production of a witness list in this case: the indictment does not charge any violent crimes; the evidence will include a large number of documents; and the alleged offenses took place over a long period of time. Courts have compelled production of a witness list in similarly complicated, white-collar prosecutions. *See United States v. Rosenthal*, No. 91 Cr. 412, 1991 WL 267767, at *4–*5 (S.D.N.Y. Dec. 3, 1991) (voluminous documentary evidence and underlying events allegedly spanning several years); *Upton*, 856 F.Supp. at 750–51 (documentary evidence and underlying events allegedly spanning more than two years); *United States v. Shoher*, 555 F.Supp. 346, 353–55 (S.D.N.Y.1983) (documentary evidence and seventeen-month period of offenses); *Turkish*, 458 F.Supp. at 881 (25,000 documents and indictment that alleged fifteen-month period of offenses).

The Government contends that several *Turkish* factors point in favor of denying production of a witness list. *First,* one defendant—Nachamie—had both a prior arrest relating to possession of a weapon and menacing and a prior conviction for arson during the 1970s. But there are eight defendants in this case and one defendant's 25–year–old conviction does not outweigh the impact of the other *Turkish* factors. *Second,* some of the witnesses in this case—the beneficiary witnesses (patients)—are particularly vulnerable to intimidation, because they are aged and have already been subject to manipulation. But vague assertions of the potential vulnerability of some witnesses do not constitute a "realistic possibility" that providing a witness list will lead to witness intimidation. *Third,* while this case does involve a large number of documents, eyewitness testimony also will play a significant role at trial. Nevertheless, as described above, the Government has produced a massive number of documents and surely expects to rely upon them extensively at trial. *Fourth,* six of the eight defendants have retained counsel, indicating that they have adequate funds with which to investigate and prepare their defense. In a complicated criminal case such as this one, however, the mere fact that the majority of defendants have retained counsel does not mean that

they possess unlimited funds to cope with voluminous pretrial discovery and a lengthy trial. For example, one defendant recently replaced his retained counsel with appointed counsel.

I conclude that Schrager has made "a specific showing of need outweighing the [G]overnment's fear of danger from disclosure." *Turkish*, 458 F.Supp. at 881 (quotation marks omitted). The Government is required to produce a witness list to all defendants. The next question is when the Government must do so. The Government notes that it has not yet prepared a witness list, and courts that have granted witness lists have disagreed on the time for production. *Compare Rosenthal*, 1991 WL 267767, at *5 (at least a month before trial) *with Turkish*, 458 F.Supp. at 882 (within seven days of court's order). Here, the Government must produce a witness list to each defendant fourteen days before trial and update the list as necessary. That will give defendants sufficient time to prepare for trial, while minimizing any lingering concerns about witness intimidation or tailoring of testimony.

A status conference is scheduled for February 4, 2000 at 4:30 P.M.

SO ORDERED.