**UNITED STATES,**

v.

**John J. RIGAS, Timothy J. Rigas, Michael J. Rigas, and Michael C. Mulcahey, Defendants.**

**No. 02 Cr. 1236(LBS).**

United States District Court, S.D. New York.

April 21, 2003.

Christopher J. Clark, Timothy J. Coleman, United States Attorneys Office–Southern District of New York, New York City, for the United States.

Peter Fleming, Jr., Curtis, Mallet–Prevost, Colt & Mosle LLP, New York City, for John Rigas.

Paul R. Grand, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, for Timothy Rigas.

Andrew J. Levander, Swidler, Berlin, Shereff, Friedman, LLP, New York City, for Michael Rigas.

Mark J. Mahoney, Harrington & Mahoney, Buffalo, NY, for Michael Mulcahey.

### MEMORANDUM AND ORDER

SAND, District Judge.

Defendants John Rigas, Timothy Rigas, Michael Rigas, and Michael Mulcahey ("Defendants") are charged with conspiracy, securities fraud, bank fraud, and wire fraud in connection with the control and management of Adelphia Communications Corporation ("Adelphia"). Pursuant to Federal Rule of Criminal Procedure 7(f), John Rigas, Michael Rigas, and Michael Mulcahey now seek an order directing the government to provide bills of particulars responsive to their individual requests.[1] Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E)(i), Defendants also move the Court to compel disclosure of certain documents prepared by legal and accounting professionals who examined Defendants' conduct while employed by Adelphia's Special Committee of Independent Directors. For the reasons set forth below, the motions are denied.

### BACKGROUND

The 103–page, 214–paragraph indictment in this case ("Indictment") charges Defendants with one count of conspiracy and 23 counts of securities fraud, wire fraud, and bank fraud. Briefly summa-

---

1. Defendants originally brought a joint motion seeking a bill of particulars on a number of grounds applicable to all Defendants. As described below, that motion has been resolved on consent.

rized, the Indictment outlines the following facts. As of December 31, 2000, Adelphia was the sixth largest cable television provider in the United States and was controlled by members of the Rigas family. Organized as a holding company, Adelphia was the indirect owner of assets owned by its subsidiaries. Separate, but connected with, Adelphia and its subsidiaries were certain Rigas Family Entities ("RFEs"), which were involved in cable television ("Cable RFEs") and other businesses ("Other RFEs"). The operating revenues and expenses of Adelphia, its subsidiaries, and the RFEs were organized through a centralized cash management system ("CMS").

Adelphia's capital structure became highly leveraged due to a series of acquisitions of other cable operators in 1999, which were funded through (1) secured loans from banks and (2) the sale of debt and equity securities to the public. Starting in 1996, Adelphia subsidiaries had also entered into co-borrowing agreements with Cable RFEs in which both participants were jointly and severally liable for debt incurred in connection with certain secured syndicated bank loans. The Indictment sets out a number of these co-borrowing credit facilities as well as the debt securities and preferred stock issued by Adelphia, and its subsidiaries. During this period of leveraged acquisitions and co-borrowing, Defendants filed financial statements pursuant to SEC regulations and made additional material disclosures about its business and performance. The latter disclosures included quarterly press releases and conference calls in which Defendants discussed Adelphia's earnings, growth, and number of cable and high-speed Internet subscribers.

The Indictment outlines Defendants' participation in an alleged scheme to defraud Adelphia shareholders and creditors between January 1999 and May 2002.

Five aspects of the alleged scheme are the focus of the Indictment: (1) fraud in connection with Adelphia's liability under the co-borrowing agreements; (2) fraud in connection with Adelphia's efforts at deleveraging; (3) fraudulent reporting of Adelphia's operating results; (4) fraudulent efforts to avoid or misrepresent compliance with the terms of bank loans; and (5) fraud in connection with a series of self-dealing transactions between Adelphia and members of the Rigas family. The Indictment describes each aspect of the alleged scheme in some detail. Regarding Adelphia's liability under the co-borrowing agreements, for example, the Indictment alleges that Defendants caused Adelphia to file Form 10–K documents containing financial statements that concealed the outstanding joint and several liabilities under the co-borrowing agreements. Regarding the alleged self-dealing, the Indictment avers that Defendants caused Adelphia to enter into a series of transactions for the benefit of the Rigas family, including the satisfaction by Adelphia of margin calls on Rigas accounts through the use of unauthorized and undisclosed wire transfers from the CMS, the personal use of Adelphia's corporate aircraft, and the use of Adelphia funds to construct a golf course in Coudersport, Pennsylvania on land owned by John Rigas. As part of the conspiracy count, the Indictment outlines the means and methods used by Defendants and a series of overt acts, which list specific agreements and dates, committed in furtherance of the conspiracy. The securities fraud, wire fraud, and bank fraud counts specify the securities, wire transfers, and bank credit agreements at issue. In sum, the Indictment centers on an approximately three-year period in which Defendants allegedly engaged in a pattern of criminal conduct designed to conceal or minimize Adelphia's increasingly precarious financial condition and the Rigas fami-

ly's improper use of Adelphia funds for personal purposes.

This case is scheduled for trial on January 5, 2004. On November 1, 2002, the government completed Rule 16 discovery of the information in its possession, which included thousands of documents along with indices identifying who produced the document and, in some cases, the subject matter of the document or group of documents identified. Nevertheless, both parties acknowledge that, due to the complexity of the case, their respective investigations are ongoing. (Tr. of Oral Arg. of 4/10/03 ("Tr.") 18–19.) The defense, therefore, continues to obtain material as it becomes available and as the government completes the process of gathering data and making decisions with respect to the streamlining of the case. (Tr. 30–31.) To ensure adequate time to prepare for trial, the government has agreed to the following discovery schedule: disclosure of proposed business records to be offered into evidence two-and-a-half months before trial; disclosure of the government's witness list, witness statements, impeachment material for the government's witnesses, and notice of Rule 404(b) evidence by November 24, 2003; and disclosure of the government's marked trial exhibits and expert notices by December 5, 2003, one month before trial. (Tr. 22; Gov't Mem. 11–12.)

All Defendants filed a joint motion ("Joint Motion") for a bill of particulars requesting that the government identify four general categories of information: (1) the alleged "sham" transactions and false entries in Adelphia's books and records, which reflected an effort to manipulate Adelphia's earnings before interest, taxes, depreciation, and amortization ("EBITDA"); (2) the particular oral and written misrepresentations to which the Indictment refers; (3) the misconduct included

in the phrase "among other things"; and (4) the identity of any co-conspirators or other participants in the criminal activity. At the April 10, 2003 oral argument, the parties agreed to resolve the issues raised in the Joint Motion in the following manner. Within 60 days, the government would provide a non-preclusive bill of particulars. This initial bill of particulars may be supplemented or amended as the government proceeds with its investigation and uncovers material that may have greater significance than previously furnished material. Six weeks prior to trial, however, at the same time the government provides its witness list to Defendants, the process of supplementation will end, and Defendants will have a final bill of particulars. (Tr. 20, 23, 31–32, 71.)

In light of the resolution of the Joint Motion on consent, the Court turns to the individual motions requesting further bills of particulars and the motion to compel discovery.

## DISCUSSION

### A. Individual Requests for Bills of Particulars

"A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir.1999) (internal quotations omitted). The focus on sufficient specificity preserves the function of the bill of particulars: "enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988); *see also United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990). Although disclosure of the government's evidence and theory of the case will not bar an otherwise necessary particularization of the charges, *United*

*States v. Barnes,* 158 F.3d 662, 665 (2d Cir.1998), the bill of particulars cannot itself be used as a discovery vehicle or a means to lock the government into its proof. *United States v. Fruchter,* 104 F.Supp.2d 289, 311–12 (S.D.N.Y.2000); *United States v. Perez,* 940 F.Supp. 540, 550 (S.D.N.Y.1996); *United States v. Strawberry,* 892 F.Supp. 519, 526 (S.D.N.Y.1995). The decision whether to order the filing of a bill of particulars is within the sound discretion of the district court. *Walsh,* 194 F.3d at 47.

John Rigas, Michael Rigas, and Michael Mulcahey each make separate requests for bills of particulars, which are described in turn and considered together. John Rigas was Chairman of the Board of Directors, President and Chief Executive Officer of Adelphia. The Indictment alleges that he was principally and ultimately responsible for the management of Adelphia's business, and thus it charges him with numerous alleged fraudulent activities and self-dealing transactions. In response, he argues that the government fails to indicate whether he personally participated in, or had personal knowledge of, the various "internal" schemes alleged in the Indictment and, if not, the theory upon which the government seeks to hold him criminally liable.

Michael Rigas was Executive Vice President for Operations, Secretary, and a member of the Board of Directors of Adelphia. The Indictment alleges that he was responsible for the business operations of Adelphia. It describes his involvement in the preparation of financial statements and press releases, conference calls, and "road shows." It names him as a participant in the scheme to avoid reporting the joint liability of Adelphia on the co-borrowing agreements and identifies him as being involved in misrepresentations regarding Adelphia's purported deleveraging, earnings, and operations performance.

In his individual motion for a bill of particulars, Michael Rigas seeks two general categories of information. First, he requests identification of each of the schemes for which he is liable, the legal basis for his liability, and the particular conduct for which he is liable. This category can be generally described as a request for more information regarding his role in particular aspects of the financial schemes giving rise to the criminal charges at issue. Second, he requests the identification of each of the Adelphia employees alleged to have acted at his direction in specified paragraphs of the Indictment. (*See* ¶¶ 56–57, 149–50.)

Michael Mulcahey was Director of Internal Reporting for Adelphia. The Indictment alleges that he participated in the management of Adelphia's treasury functions: supervising money flowing into and out of Adelphia, reporting Adelphia's financial condition to lenders and debt security holders, and internal record-keeping regarding expenditures on behalf of the Rigas family and entities they owned or controlled. Mulcahey's request for particulars seeks a similar level of detail as Michael Rigas's motion. He argues that the Indictment fails to identify the conduct that establishes his role in the alleged conspiracy, the employees who acted at his direction, the aspects of the CMS that were illegal, the books or records that contain false entries, and the property subject to forfeiture. In sections of the Indictment where he is named, (*see, e.g.,* ¶¶ 68–71, 82, 96, 161–65), Mulcahey asserts that the charges do not relate to business functions in which he had any responsibility or specify his conduct in adequate detail.

■ Upon careful review of the Indictment, the Court concludes that further bills of particulars are not warranted. First, unlike indictments involving a worldwide criminal conspiracy, *United States v.*

*Bin Laden,* 92 F.Supp.2d 225 (S.D.N.Y. 2000), or defendants who are identified as tangential participants in the criminal activity, *United States v. Nachamie,* 91 F.Supp.2d 565, 571 (S.D.N.Y.2000), the present case involves a small group of defendants who are alleged to have had intimate involvement with the preparation and carrying out of a series of fraudulent activities over a three-year period. Even if the alleged conspiracy is multi-faceted, Defendants are simply not faced with an indictment that lacks a "shred of detail" about the nature of the charges. *Barnes,* 158 F.3d at 665. The Indictment sets forth each aspect of the scheme in a manner sufficient to apprise Defendants of the conduct with which they are charged. Furthermore, the Indictment must be viewed in the broader context of the information available to Defendants. *See United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987) ("Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."); *Bin Laden,* 92 F.Supp.2d at 233 (stating that a court must examine the totality of information available to the defendants when deciding whether to order filing of a bill of particulars). Here, the government previously agreed to an advanced schedule of pretrial discovery disclosing, *inter alia,* marked exhibits and witness lists, and it has now agreed to provide a bill of particulars addressing Defendants' general areas of concern. The combination of the lengthy Indictment, the early discovery, and the further particularization to be provided by the government goes well beyond the minimum level of detail necessary to prepare a defense and to avoid surprise. The government is not obligated to go further and provide specific information regarding the individual Defendants' alleged role in the various aspects of the scheme. *See, e.g., United States v. Cephas,* 937 F.2d 816, 823 (2d Cir.1991)

("[S]pecific acts need not be alleged with respect to every named defendant, if the indictment is otherwise sufficient and names the other persons involved in the criminal activity."); *Nachamie,* 91 F.Supp.2d at 575 (rejecting demand for bill of particulars identifying each false Medicare claim prepared by defendant and submitted as part of the conspiracy); *United States v. Ferrarini,* 9 F.Supp.2d 284, 299–300 (S.D.N.Y.1998) (rejecting demand for bill of particulars outlining defendant's specific role in the charged conduct and actions taken with respect to mail and insurance fraud counts); *see also Fruchter,* 104 F.Supp.2d at 312 ("[T]he important question is whether the information sought is necessary, not whether it is helpful.") (internal quotations omitted).

Defendants rightly note that the government cannot rely on the sheer quantity of the documents produced during discovery as an automatic substitute for identifying the charges with the necessary specificity. *Davidoff,* 845 F.2d at 1155; *Bortnovsky,* 820 F.2d at 575. This general principle, however, does not allow Defendants to use the vastness or complexity of the alleged conspiracy and its attendant documentary evidence as a sword against the government when the Indictment, discovery, and other information provided by the government adequately notify Defendants of the charges against them. *See, e.g., United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984) (stating that, in a case involving an elaborate three-year insurance fraud scheme implicating numerous defendants, denial of a bill of particulars was not an abuse of discretion when indictment described elements of the scheme and prosecutor provided extensive discovery); *United States v. Hanna,* 198 F.Supp.2d 236, 249 (E.D.N.Y.2002) (denying bill of particulars in a case of securities, mail, and wire

fraud involving 21 defendants and 119 counts). Given the discovery schedule and the parties' agreement providing for a bill of particulars that addresses Defendants' general concerns, the Court concludes that further particularization is not necessary. The individual motions for bills of particulars are denied.

## B. *Motion to Compel Discovery*

Defendants also move to compel disclosure of certain documents produced by two law firms, Covington & Burling and Boies, Schiller & Flexner, and the accounting firm PriceWaterhouseCoopers (collectively, "Firms"). According to Defendants, the Firms were engaged by Adelphia and its Special Committee to investigate the conduct of Defendants and to determine whether or not Defendants engaged in any wrongdoing during their management of Adelphia. As part of their investigation, the Firms created catalogues indexing Adelphia's documents by issue, conducted interviews, made presentations to the government and other parties, and prepared reports synthesizing their conclusions. Defendants now request these memoranda, presentations, reports, and issues catalogues (collectively, "Firm Documents") pursuant to Federal Rule of Criminal Procedure 16.

The government does not deny that it possesses at least some of the Firm Documents. The prosecutor has agreed to provide any documents referred to, cited in, or incorporated in the Firm Documents; any witness statements subject to disclosure under 18 U.S.C. § 3500; and any *Brady* or *Giglio* material contained therein. The government, however, opposes Defendants' request for the issue catalogues and the Firms' memoranda, presentations, or reports summarizing their conclusions. The government avers that the

issues catalogues correspond only to a subset of the discovery previously produced by the government and that it is not required to produce documents containing the Firms' analytical conclusions.

Defendants rely exclusively on Federal Rule of Criminal Procedure 16(a)(1)(E)(i) as the basis for their request. Rule 16(a)(1)(E)(i) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense[.]

■ Rule 16(a)(1)(E)(i) entitles a defendant to documents or other items that are material to preparing arguments in response to the prosecution's case-in-chief.[2] *United States v. Armstrong*, 517 U.S. 456, 462, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The key term for present purposes is "material." A document is material if:

> [I]t could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule merely because the government may be able to use it to rebut a defense position.... Nor is it to be deemed material merely because it would have dissuaded the defendant from proffering easily impeached testimony.

*United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993) (internal citations omitted); *cf.* *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir.1991) ("Materiality

**2.** Formerly Rule 16(a)(1)(C), current Rule 16(a)(1)(E)(i) was relettered for stylistic purposes on December 1, 2002. Fed.R.Crim.P. 16 advisory committee's note (2002).

means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.") (quoting *United States v. Ross,* 511 F.2d 757, 762–763 (5th Cir.1975)).

It is Defendants' burden to make a *prima facie* showing that documents sought under Rule 16(a)(1)(E)(i) are material to preparing the defense. *United States v. McGuinness,* 764 F.Supp. 888, 894 (S.D.N.Y.1991). "To establish a showing of materiality, a defendant must offer more than the conclusory allegation that the requested evidence is material." *United States v. Ashley,* 905 F.Supp. 1146, 1168 (E.D.N.Y.1995) (internal quotations omitted). Here, Defendants argue that the Firm Documents will save them time in sifting through discovery and, as the information contained therein presumably played a role in the structure of the government's case, will provide information material to preparing their defense.

Judge Swain recently addressed a similar request, and the Court finds her reasoning persuasive in the present case. *United States v. Reddy,* 190 F.Supp.2d 558 (S.D.N.Y.2002). In *Reddy,* the defendants were charged with mail and wire fraud in connection with an alleged scheme to defraud Electronic Data Systems, Inc. ("EDS") by falsely overstating earnings of an EDS subsidiary. After learning of the scheme, EDS conducted its own internal investigation, which included interviewing corporate employees and analyzing evidence gathered over the course of the investigation. Pursuant to its discovery obligations, the government produced all documents gathered in the investigation and statements of the defendants, but withheld two categories of materials: "(1) witness statements obtained by EDS's in-vestigators; and (2) the work product of EDS's investigators, such as documents created by EDS's investigators during the course of the investigation setting forth the investigator's analysis of the evidence they had gathered." *Id.* at 572. The defendants requested the documents pursuant to Rule 16 on the grounds that they established the basis for the prosecution and thus were material to their defense. Disagreeing with the defendants, Judge Swain held that the documents were not discoverable, except to the extent that the investigative file contained *Brady* or Jencks Act material. *Id.* at 573.

The Court reaches the same conclusion. Although they argue strenuously that the Firm Documents are vital to preparing their defense, at bottom Defendants attempt to equate "material" with "useful" in order to meet their burden under Rule 16(a)(1)(E)(i). (*See* Tr. 64–66.) Defendants cite no relevant support for this construction. Defendants' motion to compel disclosure of the Firm Documents is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions for orders directing the government to file a bill of particulars and to disclose the Firm Documents are denied, except to the extent agreed upon by the parties.

SO ORDERED