**UNITED STATES of America.,
Plaintiff,**

v.

**William PETERSON, a/k/a "Crazy
Billy," Defendant.**

No. 00–CR–1260 (ADS).

United States District Court,
E.D. New York.

Oct. 12, 2001.

Alan Vinegrad, United States Attorney, Central Islip, NY by Leonard Lato, Asst. United States Attorney, for plaintiff.

David W. Clayton, Hauppauge, NY, for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this criminal case, Defendant William Peterson, alleged to be also known as "Crazy Billy," is charged with one count of participating in a conspiracy to interfere with commerce by means of threats and violence (extortion) in violation of the Hobbs Act, 18 U.S.C. §§ 1951 and 3551 *et seq.;* one count of interference with commerce by means of threats and violence under 18 U.S.C. §§ 1951, 2 and 3551 *et seq.;* one count of using fire and explosives to interfere with commerce in violation of 18 U.S.C. §§ 1951, 2 and 3551 *et seq.;* two counts of arson under 18 U.S.C. §§ 844(i), 2 and 3551 *et seq.;* and two counts of using and carrying destructive devices in furtherance of arson in violation of 18 U.S.C. §§ 924(c)(1), 2 and 3551 *et seq.* Presently before the Court are Peterson's pretrial motions to strike from the superseding indictment (hereafter the "indictment") the acts referred to in paragraphs 9 through 15 and all references to him as "Crazy Billy".

### BACKGROUND

According to the indictment, Peterson was the owner of Crazy Billy's Deer Park Liquor store. Allegedly, Peterson was also the president of Price Fighters, an organization comprised of, among its other members, approximately 40 Long Island liquor store owners. One of the goals of Price Fighters was to "maintain a minimum price for the sale of certain liquors." Bottle Bargains, Bottles & Cases, and Frank's Wine & Liquor Merchants were liquor stores whose owners were not members of Price Fighters and who sold certain liquor at prices below those established by the liquor stores whose owners were members of Price Fighters.

Count One of the indictment charges that over a period from approximately March 1990 until December 24, 1995, Peterson, together with others, intentionally conspired to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by means of extortion. Specifically, the indictment alleges that Peterson and his coconspirators agreed to obtain from the owners of Bottle Bargains, Bottles & Cases, and Frank's Wine & Liquor Merchants property, namely, the "right to compete for business in the retail liquor industry, with the owners' consent, which consent was to be induced by wrongful use of actual threatened force, violence and fear."

The overt acts alleged in furtherance of the conspiracy are: the instruction from Peterson to John Doe, whose identity is known to the Grand Jury, given "in or about the fall of 1990 or the spring of 1991", to direct the owner of Bottles & Cases to raise prices at the store (paragraph 9); the firing of shots by Peterson through a window of Bottles & Cases on or about May 7, 1991 (paragraph 10); the instruction from Peterson to a coconspirator, given "in or about March 1992", to enter Frank's Wine & Liquor Merchants to determine whether it could be damaged or destroyed by fire (paragraph 11); the instruction from Peterson to John Doe # 2, whose identity is known to the Grand Jury, given "in or about the spring of 1994 and continuing until on or about February 20, 1998", to direct the former owner of Frank's Wine & Liquor Merchants to raise prices at the store (paragraph 12); the instruction from Peterson to John Doe # 2, given "in or about December 1994", to tell the former owner of Frank's Wine & Liquor Merchants to stop giving away free bottles of liquor with purchases of $50.00

or more (paragraph 13); the instruction from Peterson to John Doe #2, given on or about February 20, 1998 and continuing until in or about April 2000, to direct the new owner of Frank's Wine & Liquor Merchants to raise prices at the store (paragraph 14); and the employment of fire and explosives in the form of Molotov cocktails by a coconspirator, acting under Peterson's direction, to damage Bottle Bargains and Bottles & Cases on or about December 14, 1995 (paragraph 15).

Count Two of the indictment charges Peterson with interference with commerce by means of threats and violence. Specifically, the indictment asserts that Peterson threatened and committed physical violence to the property of Bottle Bargains and Bottles & Cases, in furtherance of a plan and purpose to commit extortion. Count Three charges Peterson with utilizing fire and explosives during the commission of Counts One and Two. Counts Four and Five charge Peterson with arson relating to the use of Molotov cocktails to damage the Bottle Bargains and Bottles & Cases buildings. Finally, Counts Six and Seven charge Peterson with using and carrying destructive devices in furtherance of the arson charges alleged in Counts Four and Five.

## DISCUSSION

### A. As to the motion to strike the acts referred to in paragraphs 9 through 15

 Peterson first moves to strike the acts described in paragraphs 9 through 15 on identical grounds, alleging that "no conspiracy can be established to have existed" during the referenced time periods. In addition, Peterson alternatively argues that the acts referred to in paragraphs 9 and 10 should be stricken from the indictment as unfairly prejudicial in establishing whether he caused others to employ the use of Molotov cocktails during the incident on or about December 14, 1995, because the alleged acts outlined in paragraphs 9 and 10 took place approximately four and a half years earlier. Lastly, Peterson contends that the act described in paragraph 10 should be stricken from the indictment because evidentiary support for that act was obtained as a result of "unconstitutional" police conduct.

Peterson's first argument, essentially that no evidence can be produced to demonstrate the existence of his participation in a conspiracy, is foreclosed by *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) where the United States Supreme Court stated that: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for [a] trial of the charge on the merits. The Fifth Amendment requires nothing more." Justice Black opined that "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Id.*

The broad language of *Costello* was echoed and reaffirmed in *U.S. v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) and has been reflected in numerous decisions by the Second Circuit. *See,* e.g., *U.S. v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998); *U.S. v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992), cert. denied, 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580, (1992); and *U.S. v. Casamento,* 887 F.2d 1141, 1182 (2d Cir.1989). Accordingly, so long as the indictment is facially

valid, and Peterson does not so assert, the Fifth Amendment does not require the Court to peer behind the indictment to evaluate the adequacy of the evidence upon which it was based.

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "shall be a plain, concise and definite statement of the essential facts constituting the offense charged." *See also U.S. v. Walsh*, 194 F.3d 37, 44 (2d Cir.1999). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *Stavroulakis*, 952 F.2d at 693 (citing *Russell v. U.S.*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962)). Moreover, " 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " *Stavroulakis*, 952 F.2d at 693 (quoting *U.S. v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975)).

The Hobbs Act, or 18 U.S.C. § 1951, provides in relevant part that:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section

. . . . .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

An evaluation of the indictment with regard to the conspiracy count reveals that it is facially valid. The indictment tracks the precise language contained in the Hobbs Act and gave Peterson notice of the specific conduct charged against him. Further, the conspiracy count alleges the existence of more than one coconspirator; the alleged victims of the conspiracy; and the time frame in which the alleged violations took place. Although the Government is not required to prove any overt act in order to establish a Hobbs Act conspiracy, *see U.S. v. Maldonado–Rivera*, 922 F.2d 934, 983 (2d Cir.1990), cert. denied, 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991), any concerns Peterson may have regarding the sufficiency of the evidence against him should be reserved for the trial, not this pre-trial motion.

Next, Peterson alternatively argues that the alleged conspiracy to interfere with commerce by means of extortion started and ended with the two acts of arson occurring on or about December 14, 1995. Therefore, according to Peterson, the acts described in paragraphs 9 and 10 which took place in 1990 and 1991, should be stricken from the indictment as remote and unfairly prejudicial in determining whether he caused his purported coconspirators to use Molotov cocktails during that incident of December 1995 because the alleged acts occurred approximately four and a half years prior to that date.

"It is well settled that a criminal conspiracy [under the Hobbs Act] is a continuing crime in that the conspiracy continues until after the goal for which it was formed has been attained." *U.S. v. Meyers*, 529 F.2d 1033, 1036 (7th Cir.1976) (citing *U.S. v. James*, 161 U.S.App.D.C. 88, 494 F.2d 1007, 1026 (1974), cert. denied, 419 U.S.

1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974)). " '[I]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal.' " *U.S. v. Aracri*, 968 F.2d 1512, 1521 (2d Cir.1992) (quoting *Maldonado–Rivera*, 922 F.2d at 963). It is of the essence of extortion that one compel another to surrender property. *U.S. v. Delano*, 55 F.3d 720, 726–27 (2d Cir.1995). The victim's fear may be of a loss that is purely economic. *See DeFalco v. Bernas*, 244 F.3d 286, 313 (2d Cir.2001); *U.S. v. Jackson*, 180 F.3d 55, 69–70 (2d Cir.1999).

Here, the apparent object of the conspiracy was to acquire property from the owners of Bottle Bargains, Bottles & Cases, and Frank's Wine & Liquor Merchants. In particular, the indictment alleges that Peterson and his coconspirators sought to prevent the liquor store owners from competing for business in the retail liquor industry. The Second Circuit has held that "The concept of property under the Hobbs Act, as devolved from its legislative history and numerous decisions, is not limited to physical or tangible property or things ... but includes, in a broad sense, any valuable right considered as a source or element of wealth." *U.S. v. Tropiano*, 418 F.2d 1069, 1075–76 (2d Cir.1969) (citations omitted). Moreover "The right to pursue a lawful business including the solicitation of customers necessary to the conduct of such business has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments of the Constitution." *Id.* at 1076 (citing *Louis K. Liggett Co. v. Baldridge*, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928)).

The Government claims that it will adduce evidence at the trial showing that Peterson hired a crew to set fire and destroy the liquor stores when his efforts of intimidation commencing in the fall of 1990 failed. The Government further indicates that it "possesses still additional evidence that at various other times in or about and between 1990 and December 1995, Peterson and his coconspirators discussed setting fire to yet other liquor stores, and that evidence may be presented to the Grand Jury for the purpose of seeking a superseding indictment" as was subsequently handed down. If, as it explicitly alleges, the Government indeed adduces this evidence at the trial, it could show a conspiracy to impede the owners of Bottle Bargains and Bottle & Cases from competing for business in the retail liquor industry spanning from the fall of 1990 to December 14, 1995.

Finally, Peterson argues that the act described in paragraph 10, as to alleged shots fired through a window of Bottles & Cases, should be stricken from the indictment because Peterson's revolver was obtained through "unconstitutional" police conduct. However, in his motion, Peterson contradictorily indicates that he surrendered his weapon to the Suffolk County Police Department at the request of a detective. Assuming that he contends that the revolver should be suppressed as the product of an illegal search and seizure under the Fourth Amendment, Peterson fails to articulate how the police conduct was illegal; he relies upon a bald assertion. Accordingly, without more, the Court declines to strike the act outlined in paragraph 10 on this ground.

**B. As to the motion to strike all references to the alias "Crazy Billy"**

■ Peterson next moves to strike all references to the alias "Crazy Billy" from the indictment, arguing that any mention of this name is prejudicial and unfair because the name "Crazy Billy" is merely a trade name. Peterson contends that he has operated his establishment for several

years under a borrowed variation of the name "Crazy Eddie" as a marketing device in an effort to emphasize his low prices. Peterson argues that the name "Crazy Billy" was not referred to in testimony before the Federal Grand Jury, but rather it was used in questions put to witnesses by the Assistant United States Attorney. In support of his contentions, Peterson points out that the complainant, Steven Herman, referred to him as a "gentleman named Bill Peterson" during his Grand Jury testimony.

Fed.R.Crim.P. 7(d) provides that "The court on motion of the defendant may strike surplusage from the indictment or information." In *U.S. v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir.1996) (quoting *U.S. v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)) the Second Circuit cautioned that " 'motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime alleged and are inflammatory and prejudicial.' " However, if evidence is admissible and relevant to the charge "the items in the indictment will not be stricken no matter how prejudicial." *U.S. v. Payden*, 613 F.Supp. 800, 823–24 (S.D.N.Y. 1985). "Use of aliases in the indictment is permissible 'If the Government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment.' " *U.S. v. Rodriguez*, 734 F.Supp. 116, 128 (S.D.N.Y. 1990), *aff'd*, 968 F.2d 130 (2d Cir.1992), *cert. denied*, 506 U.S. 847, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992) (quoting *U.S. v. Clark*, 541 F.2d 1016, 1018 (4th Cir.1976)).

In opposition, the Government responds that it will not elicit testimony to demonstrate that Peterson was literally crazy. Instead, the Government argues that witnesses, specifically Peterson's coconspirators, will testify that in furtherance of the conspiracy "other coconspirators told them that certain unlawful acts were to be done for 'Crazy Billy,' a person whose last name they did not know but understood to be the owner of Crazy Billy's Deer Park Liquor." The Government also claims that eliminating from the indictment the adjective "Crazy" would permit the jury to speculate that a "Billy" distinct from Crazy Billy's Deer Park Liquor was involved.

Given the Government's assertion that Peterson's alias will comprise part of its proof at trial, inclusion of Peterson's alias in the indictment is relevant. Furthermore, as observed in *U.S. v. Esposito*, 423 F.Supp. 908, 911 (S.D.N.Y.1976), "inclusion of the alias in the indictment is proper and, indeed, may well serve to obviate jury confusion." *See also, U.S. v. Ianniello*, 621 F.Supp. 1455, 1479 (S.D.N.Y.1985), aff'd. 808 F.2d 184 (2d Cir.1986). As always, the jury in this case will be charged that the indictment is not evidence and functions merely to set forth the accusations against Peterson. If the Government fails to offer proof of the alias listed in the indictment as tending to identify Peterson and connect him to acts that are charged, then, following the procedure adopted by the Second Circuit in *U.S. v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990), a motion to strike may be renewed, the alias stricken, and an appropriate cautionary instruction given to the jury.

## CONCLUSION

For the foregoing reasons, Peterson's motion to strike the acts referred to in paragraphs 9 through 15 of the indictment on inadequate evidence grounds is DENIED, and the motion to strike references to the alias "Crazy Billy" as prejudicial surplusage is DENIED.

**SO ORDERED.**