UNITED STATES of America,

v.

Mark HANNA, Marshall Bernstein, Shane Ferras John Bosco, Steven Arevalo, Antonio Bosco, Christina Classie, Christopher Finkle, Steven Hanna, Paul Karkenny, Douglas Pollicino, William Richmond, Corey Rockafeler, Raymond Saulon, James Scott, Michael Spagnoli, and Alan Steiner, Defendants.

No. CR–01–076(S–2)(ADS).

United States District Court,
E.D. New York.

April 22, 2002.

238

Alan Vinegrad, United States Attorney by Tanya Y. Hill, Assistant United States Attorney, Brooklyn, NY, for Plaintiff U.S.

Schlam Stone & Dolan by Peter R. Schlam, New York City, for Defendant Mark Hanna.

Edward P. Jenks, Mineola, NY, Douglas T. Burns, Garden City, NY, for Defendant Marshall Bernstein.

Gibbons Del Deo by Lawrence S. Lustberg, Newark, NJ, for Defendant Shane Ferras.

Lawrence Shoenbach, New York City, Bradley D. Simon, New York City, for Defendant John Bosco.

Donahue & Dohahue by Patrick Egan, Philadelphia, PA, for Defendant Steven Arevalo.

Storch Amini & Munves, P.C. by Norman Trabulus, Garden City, NY, for Defendant Antonio Bosco.

Pillair & Vella by Robert M. Vella, Jr., Mineola, NY, for Defendant Christina Classie

Bruce A. Barket, Garden City, NY, for Defendant Christopher Finkle.

Joseph R. Benfante, New York City, for Defendant Steven Hanna.

Federal Defenders Services Unit by Tracy Gaffey, Central Islip, NY, for Defendant Paul Karkenny.

William J. Kelleher, Rockville Centre, NY, for Defendant Douglas Pollicino.

Terrence P. Buckley, Islandia, NY, for Defendant William Richmond.

Darryl L. Pastor, New York City, for Defendant Corey Rockafeler.

Gersten, Savage & Kaplowitz, LLP by Barry S. Zone, New York City, for Defendant Raymond Saulon.

John F. Carman, Garden City, NY, for Defendant James Scott.

Martin Geduldig, Hicksville, NY, for Defendant Michael Spagnoli.

Alan M. Nelson, Lake Success, NY, for Defendant Alan Steiner.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges against the defendants Mark Hanna ("M.Hanna"), Marshall Bernstein ("Bernstein"), Shane Ferras ("Ferras"), John Bosco ("J.Bosco"), Steven Arevalo ("Arevalo"), Antonio Bosco ("A.Bosco"), Christina Classie ("Classie"), Christopher Finkle ("Finkle"), Steven Hanna ("S.Hanna"), Paul Karkenny ("Karkenny"), Douglas Pollicino ("Pollicino"), William Richmond ("Richmond"), Corey Rockafeler ("Rockafeler"), Raymond Saulon ("Saulon"), James Scott ("Scott"), Michael Spagnoli ("Spagnoli") and Alan Steiner ("Steiner") (collectively, the "defendants"). In particular, the Government alleges that the defendants participated in a scheme to defraud investors in the sale of securities.

Presently before the Court are pre-trial motions by the defendants made jointly and separately. The motions of the defendants involve five subjects: (1) dismissal of the indictment, counts of the indictment or language of the indictment; (2) severance; (3) disclosure of *Brady, Giglio,* 404(b) evidence, government informants and coconspirators, agent notes and other memoranda; (4) disclosure of the grand jury minutes; and (5) production of bills of particulars.

### I. BACKGROUND

In July of 1992, HGI Incorporated ("HGI") began operating as a registered securities broker-dealer. At HGI, M. Hanna was the secretary, chairman of the board and owner of about forty percent of the company. During its operation, HGI employed traders who purchased and sold securities on behalf of HGI's own accounts and brokers who purchased and sold securities on behalf of HGI's retail customers.

At HGI, Ferras was a broker, general securities principal and minority interest owner in the company. Arevalo, A. Bosco, Classie, Finkle, S. Hanna, Pollicino, Richmond, Rockafeler, Saulon, Scott, Spagnoli and Steiner were employed as brokers at HGI. J. Bosco and Karkenny allegedly held themselves out to investors as brokers at HGI, when in reality, this was not true.

In February of 1994, Maidstone Financial, Incorporated ("Maidstone") began operating as a registered securities broker-dealer. At Maidstone, Bernstein was the chairman of the board, principal controlling officer and owner of about sixty percent of the company. Maidstone also employed traders and brokers in the same manner as HGI.

From February 9, 1994 to April 24, 1997, HGI, usually along with Maidstone, underwrote initial public offerings ("IPOs") for the following corporations: (1) Modern Medical Modalities ("Modern Med"); (2) Tivoli Industries, Inc. ("Tivoli"); (3) Sims Communications, Inc. ("Sims"); (4) Natural Health Trends Corporation ("Natural Health"); (5) International Cutlery, Ltd. ("Icut"); (6) Surge Components, Inc. ("Surge"); (7) Community Care Services, Inc. ("Community Care") and (8) Univec, Inc. ("Univec") (collectively, the "IPO Stocks").

After the underwriting of the IPOs, HGI and Maidstone acted as "market makers" for the IPO Stocks. As "market makers", HGI and Maidstone held themselves out to the public as ready, willing and able to buy and sell shares of the IPO Stock in subsequent transactions. Initially, HGI customers paid for their stock

investments by mailing checks directly to HGI or by mailing or wiring funds to Hanifen Imhoff Clearing Corporation ("Hanifen Imhoff"), HGI's clearing agent. Maidstone customers generally paid for their stock investments by mailing checks directly to Maidstone. HGI and Maidstone sent customers, among other things, trade confirmations and account statements by mail.

During their operation, HGI and Maidstone also acquired other unspecified stock in bulk for resale to the public. The second superceding indictment S–2 ("Indictment S–2" or the "indictment") refers to the stock acquired in bulk and the IPO Stock as the "House Stocks". The National Association of Securities Dealers ("NASD") approved the House Stocks for trading on the NASD Automated Quotation System Small Capitalization Market ("NASDAQ Small Cap. Market").

Indictment S–2 alleges the following fraudulent acts with respect to the House Stocks and the IPO Stocks in particular. First, M. Hanna, Bernstein and other unnamed individuals created sham "lock up" agreements with respect to the IPO Stocks. Specifically, they required the initial investors (the "Lock-up Purchasers") to enter into an agreement not to sell the securities, absent written consent of the underwriter, for a certain period of time after the IPO offering (the date when the security was first offered for public sale).

M. Hanna, Bernstein and other unnamed individuals then allegedly agreed with certain Lock-up Purchasers before the IPO offering that these purchasers, in exchange for money or kickbacks, would sell their securities to HGI or Maidstone immediately after the IPOs became effective without disclosing this information to the investing public. M. Hanna, Bernstein and other unnamed individuals further directed the Lock-up Purchasers to sell their securities to HGI or Maidstone at prices substantially below the prevailing price of the stock in the secondary market (referring to the trading in existing or outstanding securities on exchanges and over the counter markets) which enabled HGI to earn substantial profits at the expense of investors.

Second, the defendants, except M. Hanna and Bernstein, artificially inflated the demand for the House Stocks through fraudulent and deceptive sales practices with respect to public customers. In particular, they falsely convinced customers to invest money in the House Stocks stating: (1) a big news announcement was coming out; (2) the broker was privy to inside information; (3) baseless price predictions; and (4) positive information only. They also executed unauthorized purchases of the House Stocks in their customers' accounts and then attempted to compel the customers to pay for the unauthorized purchases by persuading them that the House Stocks were a good investment.

In addition, they prevented the customers from selling the House Stocks by means of: (1) avoiding customer telephone calls; (2) transferring customer calls to another broker; (3) failing to write out a sell ticket; and (4) failing to provide the sell ticket to a trader for execution. Moreover, they allegedly refused to execute a customer's order to sell the House Stocks unless the sale was "crossed" with a purchase of the same or similar amount of the House Stocks by another customer.

In June of 1997, HGI ceased operations. Most of the HGI brokers allegedly went to work at Maidstone to continue to trade in the House Stocks. In December of 1997, Maidstone ceased operations.

On February 15, 2001, the Government filed an indictment naming twenty-nine defendants in fifteen counts. Thereafter, the

Government filed a superceding indictment S–1 ("Indictment S–1") on November 30, 2001 naming twenty-one defendants in one hundred twenty-eight counts. On March 6, 2002, the Government filed Indictment S–2 naming the defendants in one hundred and nineteen counts.

Count one of Indictment S–2 alleges that between July of 1992 and March of 1998, the defendants engaged in a conspiracy to defraud investors in the sale of securities arising out of the operation of HGI and Maidstone. In particular, count one charges that the defendants conspired to commit securities fraud, mail and wire fraud in violation of 17 C.F.R. § 240.10b–5, 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 371, 1341, 1343, 2326(1) & 3551.

Count two alleges that between February of 1995 and December of 1997, the defendants, except Pollicino and Rockafeller, committed fraud in connection with the purchase and sale of the securities of Sims in violation of 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 2 & 3551. Count three charges that between June of 1995 and December of 1997, the defendants committed fraud in connection with the purchase and sale of the securities of Natural Health in violation of 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 2 & 3551.

Count four alleges that between December of 1995 and December of 1997, the defendants committed fraud in connection with the purchase and sale of the securities of Icut in violation of 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 2 & 3551. Count five charges that between July of 1996 and December of 1997, the defendants, except Classie, S. Hanna, Karkenny and Scott, committed fraud in connection with the purchase and sale of the securities of Surge in violation of 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 2 & 3551.

Count six charges that between October of 1996 and December of 1997, the defendants, except A. Bosco and Scott, committed fraud in connection with the purchase and sale of the securities of Community Care in violation of 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 2 & 3551. Count seven alleges that between October of 1996 and December of 1997, the defendants, except Arevalo, Pollicino, Scott and Steiner, committed fraud in connection with the purchase and sale of the securities of Univec in violation of 15 U.S.C. §§ 78j(b), 78f(f) and 18 U.S.C. §§ 2 & 3551.

Counts eight through thirty charge that between July of 1992 and December of 1997, the defendants committed mail fraud in violation of 18 U.S.C. §§ 1341, 2326(1), 2 & 3551. Counts thirty-one through seventy-six allege that between February 15, 1996 through April 15, 1997, M. Hanna transferred the sum of $2,865,600, proceeds derived from securities fraud, from HGI's account at the European American Bank ("EAB") into his personal account at Chemical Bank in violation of 18 U.S.C. §§ 1957, 2 & 3551.

Counts seventy-seven and seventy-eight charge that on January 14, 1997 and June 30, 1997, M. Hanna transferred the sum of $1,620,000, proceeds derived from securities fraud, from HGI's account at Hanifen Imhoff and EAB into his personal account at First Albany Corporation in violation of 18 U.S.C. §§ 1957, 2 & 3551. Count seventy-nine alleges that in or about January of 1997, M. Hanna transferred the sum of $1,500,000, proceeds derived from securities fraud, from his personal account at Chemical Bank to his account at United States Trust Company of New York in violation of 18 U.S.C. §§ 1957, 2 & 3551.

Counts eighty through one hundred one charge that between February 15, 1996 and April 15, 1997, Ferras transferred the sum of $817,500, proceeds derived from

securities fraud, from HGI's account at EAB into his personal account at Bank of New York in violation of 18 U.S.C. §§ 1957, 2 & 3551. Counts one hundred two through one hundred nineteen allege that between February 15, 1996 and May 15, 1997, J. Bosco transferred the sum of $633,700, proceeds derived from securities fraud, from HGI's account at EAB into his personal account at EAB and North Fork Bank in violation of 18 U.S.C. §§ 1957, 2 & 3551.

Indictment S–2 alleges further that if M. Hanna is convicted of the crimes of unlawful monetary transactions under counts thirty-one through seventy-eight, the sums transferred ($4,485,600) are subject to forfeiture. In addition, if Ferras is convicted of the crimes of unlawful monetary transactions under counts eighty through one hundred one, the sums transferred ($817,500) are subject to forfeiture. Finally, if J. Bosco is convicted of the crimes of unlawful monetary transactions under counts one hundred two through one hundred nineteen, the sums transferred ($633,700) are subject to forfeiture.

## II. DISCUSSION

### A. As to the Dismissal of the Indictment

M. Hanna seeks dismissal of the indictment on the ground that it fails to allege a material misrepresentation. Classie and Rockafeler seek dismissal of the indictment on the basis of selective prosecution. Bernstein, A. Bosco, Steiner, Arevalo and Rockafeler seek to dismiss count one of the indictment on the ground that it alleges multiple conspiracies. Bernstein seeks to dismiss counts two, three and four of the indictment alleging each count is barred by the statute of limitations. A. Bosco seeks to dismiss count two of the indictment alleging that this count is barred by the statute of limitations.

Bernstein, A. Bosco, Rockafeler and Steiner move to strike language from the indictment relating to the disclosure of profits from the House Stocks and preclude argument that non-disclosure of these profits was fraudulent. Arevalo seeks to strike overt act 28x (30x in indictment S 2) on the grounds that he withdrew from the conspiracy and that the statement was not in furtherance of the conspiracy.

#### 1. Material Misrepresentation

Rule 7 of the Federal Rules of Criminal Procedure provides in pertinent part that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). An indictment need only track the language of the statute charged and state the approximate time and place of the alleged crime. *See United States v. Pirro,* 212 F.3d 86, 92 (2d Cir.2000) ("[W]e have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (internal quotations and citations omitted).

Here, the indictment contains the applicable statutes for conspiracy to commit securities fraud, securities fraud, mail fraud, wire fraud and unlawful monetary transactions. Moreover, the language of the indictment essentially tracks these statutes *verbatim* and provides the dates and places (in approximate terms) of the alleged crimes. More is not needed. Accordingly, the motion of M. Hanna to dismiss the indictment is denied.

#### 2. Selective Prosecution

The Government has broad discretion in determining whom to prosecute. *Wayte v. United States,* 470 U.S. 598, 607,

105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) (citations omitted). However, "this discretion is bound by constitutional constraints such as the Due Process Clause of the Fifth Amendment, which prohibits a decision to prosecute from being based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Al Jibori,* 90 F.3d 22, 25 (2d Cir.1996) (internal quotations and citations omitted).

"[A] defendant must make at least a credible showing of different treatment of similarly situated persons to establish a colorable basis for a finding of discriminatory effect and consequently to become eligible for discovery." *Id.* (internal quotations and citations omitted). Classie and Rockafeler seek additional discovery to establish a claim of selective prosecution. However, neither Classie nor Rockafeler can show that the Government has declined to prosecute similarly situated individuals and singled them out. Here, the Government indicted twenty-seven HGI brokers along with Classie and Rockafeler. Moreover, they do not allege that the decision to prosecute them was based upon an improper motive, such as race, religion or the exercise of a constitutional right. Accordingly, Classie and Rockafeler are not entitled to additional discovery on the issue of selective prosecution and their motions to dismiss on this issue are denied.

### 3. Multiple Conspiracy

Indictment S–2 makes clear that the Government is charging one conspiracy in count one: the agreement to profit by defrauding the investing public with respect to the House Stocks. Bernstein, A. Bosco, Steiner, Arevalo and Rockafeler argue that the indictment alleges multiple conspiracies, namely a lock-up conspiracy and a sales practice conspiracy. Even assuming proof of multiple conspiracies, this is a question for the jury generally. *United States v. Vazquez,* 113 F.3d 383, 386 (2d Cir.1997) ("If the evidence at trial supports an inference that there was more than one conspiracy, then, whether multiple conspiracies existed is a question of fact for the jury.") (citation omitted). Accordingly, the motions to dismiss or sever on the grounds of multiple conspiracies are denied.

### 4. Statute of Limitations

The Government stipulates to the dismissal of count two of the indictment against A. Bosco which alleges fraud in connection with the purchase and sale of the securities of Sims. Accordingly, the motion of A. Bosco to dismiss count two of the indictment is granted.

Bernstein moves to dismiss counts two, three and four as time-barred. The statute of limitations for securities fraud is five years. *United States v. Scop,* 846 F.2d 135, 138 (2d Cir.1988). Bernstein bases his argument for dismissal of these counts on his contention that he was only involved in the lock-up agreements. However, the indictment charges that Bernstein was involved with activities related to each phase of the conspiracy, not just the lock-up agreements.

Moreover, the Government contends that it will introduce evidence "showing that the fraudulent activity in connection with the sale and purchase of the stocks in Counts Two through Four continued at Maidstone throughout the period charged in the indictment in those counts, and that this was done at Marshall Bernstein's direction." Government Memorandum in Opposition to Defendant's Pre-trial Motions ("Government Memorandum") at 28. Accordingly, the motion of Bernstein to dismiss counts two through four as barred by the statute of limitations is denied. *See Scop,* 846 F.2d at 139 (a continuing con-

spiracy and substantive scheme to defraud satisfies the statute of limitations).

5. **Striking Language from the Indictment**

Rule 7 of the Federal Rules of Criminal Procedure provides in pertinent part that "[t]he Court on motion of the defendant may strike surplusage from the indictment...." Fed.R.Crim.P. 7(d). The Second Circuit cautioned that "motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime alleged and are inflammatory and prejudicial." *United States v. Hernandez,* 85 F.3d 1023, 1030 (2d Cir.1996) (internal quotations and citations omitted). However, if evidence is admissible and relevant to the charge the items in the indictment will not be stricken no matter how prejudicial. *United States v. Peterson,* 168 F.Supp.2d 51, 56 (E.D.N.Y.2001) (internal quotations and citations omitted).

Bernstein, A. Bosco, Rockafeler and Steiner move to strike portions of the indictment relating to the disclosure of profits in connection with the House Stocks. The Court finds that the proof of profits that HGI and Maidstone made from the alleged sham lock-ups is relevant and admissible on the issue of the motive for making these deals. In addition, the different compensation for brokers with respect to House Stocks and other securities is relevant to the broker's motive to sell the House Stocks. Accordingly, the motions to strike portions of the indictment relating to the disclosure of profits in connection with the House Stocks are denied.

Arevalo moves to strike paragraph 30x of Indictment S–2 which alleges that he "testified falsely before the SEC that he would discourage an HGI customer from selling House Stocks only if the customer was selling at a loss, when in truth he would discourage customers from selling House Stocks whether or not the customer was selling at a loss." Indictment S–2 ¶ 30(x). The Court finds that this evidence is relevant and admissible on the issue of consciousness of guilt. Accordingly, the motion of Arevalo to strike paragraph 30(x) is denied.

M. Hanna moves to strike paragraph 30(v) of Indictment S–2 which alleges that M. Hanna "gave false testimony before the SEC that he had no day-to-day management responsibilities at HGI, when, in truth, as of that date, he had full day-to-day management responsibilities at HGI." Indictment S–2 ¶ 30(v). Similar to Arevalo, this evidence is relevant and admissible on the issue of consciousness of guilt. Accordingly, the motion of M. Hanna to strike paragraph 30(v) is denied.

6. **Dismissal of Indictment S–2**

M. Hanna has also moved to dismiss Indictment S–2 on the grounds that it adds twenty-three mail fraud counts, an allegation of perjury as an additional overt act in the conspiracy and new allegations of kickbacks just two months before the May 14, 2002 scheduled trial date. In the alternative, M. Hanna moves for a continuance in order to review the additional discovery that the new counts bring. At a hearing on April 12, 2002, the Government responded that it has produced all discovery with respect to the new counts and the information involving Maidstone. The Government also indicated that it recently received additional discovery which it will turn over to the defense immediately.

It is within the sound discretion of the district court whether to dismiss a superseding indictment. *See United States v. Grossman,* 843 F.2d 78, 84 (2d Cir.1988) (holding that the court did not

abuse its discretion in refusing to dismiss the superseding indictment filed two days before trial or in failing to grant the defendant a continuance). The new counts in Indictment S–2 arise out of the facts alleged in the original indictment—the scheme to defraud investors with respect to the House Stocks. In addition, the original indictment notes Maidstone's involvement in the underwriting of the IPOs with HGI. Further, Indictment S–2 was filed more than two months before the scheduled trial. The Court therefore finds that M. Hanna has not sustained sufficient prejudice to justify dismissing Indictment S–2 or granting a continuance. Accordingly, the motion is denied.

**B. Severance**

Bernstein, Arevalo, A. Bosco, Classie, Pollicino, Rockafeler, Saulon and Steiner move for severance. S. Hanna, Richmond and Scott join in the motions. The Government initially agreed to sever the case and to try eight defendants at a time in two trials. In a letter dated April 10, 2002, the Government advised the Court that by the next court conference dated April 12, 2002, all but fourteen of the defendants will have entered guilty pleas. Moreover, the Government states that it believes ten or fewer defendants will remain on May 14, 2002, the scheduled trial date, and therefore severance is unnecessary.

The general rule is that defendants indicted together should be tried together. *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). "[A]bsent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried." *United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983). The Second Circuit has emphatically endorsed joint trials, noting that:

> [the] preference [for joint trials of jointly indicted defendants] is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme. It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*U.S. v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998) (internal quotations and citations omitted). The Court finds that the Government's initial proposal of trying eight defendants in two separate trials is fair. The first trial will include M. Hanna, Bernstein, S. Hanna, J. Bosco, A. Bosco, Scott, Karkenny and Rockafeler. Jury selection for this trial will commence on May 14, 2002. The second trial will include Arevalo, Classie, Finkle, Pollicino, Richmond, Saulon, Spagnoli and Steiner. Jury selection in the second trial will proceed immediately after the first trial. This severance order appropriately takes into account Bernstein's request to be severed from Saulon due to a conflict of interest and the scheduling conflict of counsel for Steiner. Accordingly, the motions to sever are granted and denied in part.

**C. Various Discovery**

**1. 404(b)**

J. Bosco, Pollicino and Saulon seek disclosure of all evidence of prior bad acts under Rule 404(b) of the Federal Rules of Evidence. J. Bosco also moves to preclude evidence of his New York State conviction for permitting an individual to take his series seven examination. Classie

moves to preclude evidence of her employment with Stratton Oakmont.

Rule 404(b) requires the Government to "provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial." Fed.R.Evid. 404(b). The rule sets no minimum time for the Government to act in this respect. By letter dated January 22, 2001, the Government disclosed the 404(b) evidence that it intends to introduce at trial. The Government has further advised that it will promptly notify the Court and all defense counsel should it learn of additional 404(b) evidence. The Government's statements are sufficient at this stage of the litigation. Accordingly, the motions for disclosure of all evidence of prior bad acts under Rule 404(b) of the Federal Rules of Evidence are denied.

Evidence of J. Bosco's conviction for permitting an individual to take his series seven examination goes to his culpable intent and absence of mistake. *See United States v. Colon,* 880 F.2d 650, 657 (2d Cir.1989) (stating that a claim that defendant acted innocently or mistakenly raises disputed issue of intent). The Court reserves decision on the admissibility of this evidence.

Evidence of Classie's employment with Stratton Oakmont is relevant to show the background of the conspiracy in this case. *See United States v. Rosa,* 11 F.3d 315, 334 (2d Cir.1993) ("[I]t is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators."); *United States v. Langford,* 990 F.2d 65, 70 (2d Cir.1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."). Here, the Government argues that M. Hanna, Classie, Finkle, Pollicino and Saulon worked at Stratton Oakmont before moving to HGI. The Government further contends that the evidence will show that the many relationships which developed at Stratton Oakmont explains how many brokers came to work at HGI. Evidence of Classie's employment with Stratton Oakmont appears relevant to the background and history of the alleged conspiracy. Accordingly, Classie's motion is denied at this time with leave to renew.

### 2. *Brady/Giglio*

J. Bosco and Saulon move for the disclosure of all *Brady/Giglio* material. Arevalo seeks production of all exculpatory material in the possession of the SEC. The Government responds that it will disclose *Brady* material as it becomes aware of it. This representation is a sufficient basis for denying an application to compel disclosure under *Brady. See United States v. Gallo,* 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999). Moreover, the Court directed the Government in its pre-trial order to disclose all *Giglio* material by April 9, 2002. The Government stated that it intended to comply with this order. Accordingly, the motions to compel the disclosure of all *Brady/Giglio* material are denied.

### 3. Informants and Co Conspirators

J. Bosco moves to compel disclosure of confidential informants before trial. Arevalo, Classie and Rockafeler seek disclosure of the identities and statements of all co-conspirators. Requiring the production of the identification of all co-conspirators is in the discretion of the district court. *United States v. Gotti,* 784 F.Supp. 1017, 1019 (E.D.N.Y.1992).

The Government contends that the witness list, which it produced on January 7, 2002, identifies all of the cooperators expected to testify in this case and the Stock Activity Loss Report details the names of all the customers of each broker. The Government also states that it will, prior to trial, identify any co-conspirators whose statements will be offered against the defendants under Rule 801(d)(2)(E) of the Federal Rules of Evidence. The Government's representations are sufficient and therefore the motions to compel the disclosure of the identities and statements of all co-conspirators are denied.

"The government is not generally required to disclose the identity of confidential informants." *United States v. Fields,* 113 F.3d 313, 324 (2d Cir.1997) (citation omitted). "The defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." *Id.* (internal citations omitted). J. Bosco has not met his burden of showing the need for the disclosure of the identity of confidential informants.

#### 4. Agents' Rough Notes

Arevalo requests that the Government preserve the notes of agents involved in the investigation. The Government responds that to the extent that agents still have rough notes, they will be preserved for an in camera review by the Court. The Court directs that the Government preserve and produce for an in camera review all agents' notes.

### D. As to the Inspection of the Grand Jury Minutes

Rule 6 of the Federal Rules of Criminal Procedure provides that a district court may permit the disclosure of matters before the grand jury "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury...." Fed. R.Crim.P. 6(e)(3)(C)(ii). "Grand jury proceedings carry a 'presumption of regularity.'" *United States v. Torres,* 901 F.2d 205, 232–33 (2d Cir.1990) (citing *Hamling v. United States,* 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 2918 n. 23, 41 L.Ed.2d 590 (1974)) (internal quotations and citations omitted).

However, review of the grand jury minutes is "rarely permitted without specific factual allegations of government misconduct." *Torres,* 901 F.2d at 233 (citation omitted). Further, " 'as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.' " *Id.* (quoting *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988)).

Classie seeks inspection of the grand jury minutes in order to determine whether sufficient evidence existed to indict her. Bernstein requests inspection of the grand jury minutes to determine whether multiple conspiracies exist. Neither argument involves a specific factual allegation of government misconduct. Nor is there any other viable reason to permit such inspection. Accordingly, the motions to inspect the grand jury minutes are denied.

### E. As to the Requests for Bills of Particulars

Rule 7 of the Federal Rules of Criminal Procedure provides that a district court "may direct the filing of a bill of particulars." Fed.R.Crim.P. 7(f). A bill of particulars enables a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby

enabling [a] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (citations omitted). Acquisition of evidentiary detail is not the function of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990). The decision to grant a motion for a bill of particulars is within the sound discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984).

 Here, the indictment sufficiently informs the defendants of the nature of the charges pending against them, namely conspiracy to commit securities fraud, securities fraud, mail fraud, wire fraud and unlawful monetary transactions, thereby enabling them to prepare a defense in this matter. Moreover, the indictment particularizes the dates and places of the alleged crimes. Accordingly, the motions for bills of particulars are denied.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motions to dismiss the indictment, counts of the indictment or language in the indictment are **DENIED,** except count two with respect to A. Bosco; and it is further

**ORDERED,** that the motions to sever are **GRANTED** and **DENIED** in part; and it is further

**ORDERED,** that the motions to compel disclosure of prior bad act evidence under Rule 404(b) and to preclude evidence of Classie's employment with Stratton Oakmont under this rule are **DENIED** at this time with leave to renew; and it is further

**ORDERED,** that the motions to compel the disclosure of all *Brady/Giglio* material are **DENIED;** and it is further

**ORDERED,** that the motions to compel the disclosure of confidential informants and identities and statements of all co-conspirators are **DENIED;** and it is further

**ORDERED,** that the Government preserve and produce the notes of agents for an in camera review by the Court; and it is further

**ORDERED,** that the motions to inspect the grand jury minutes are **DENIED;** and it is further

**ORDERED,** that the motions for bills of particulars are denied.

**SO ORDERED.**